UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
:
UNITED STATES OF AMERICA ex rel. PETER : 
D. GRUBEA, :
:
        Plaintiffs, :  Case No. 1:12-cv-07199-JSR
:
  v. :
:
ROSICKI, ROSICKI & ASSOCIATES, P.C., :
PARAMOUNT LAND, INC., THRESHOLD :
LAND INC., ENTERPRISE PROCESS : **WELLS FARGO & CO.'S**
SERVICE, INC., MCCABE, WEISBERG, & : **SUPPLEMENTAL**
CONWAY, P.C., ATTORNEY OUTSOURCING : **MEMORANDUM OF LAW IN**
SUPPORT SERVICES, INC., REO AMERICA : **SUPPORT OF ITS MOTION TO**
ABSTRACT, INC., CENLAR FSB, : **DISMISS RELATOR'S THIRD**
CITIGROUP INC., CITIBANK, N.A., : **AMENDED COMPLAINT**
CITIMORTGAGE, INC., DITECH FINANCIAL :
LLC, EVERHOME MORTGAGE COMPANY, :
EVERBANK FSB, FLAGSTAR BANK, FSB, :
GREEN TREE CREDIT, JAMES B. NUTTER & :
CO., METLIFE BANK, N.A., NATIONSTAR :
MORTGAGE LLC, ONEWEST BANK FSB, :
PHH MORTGAGE CORPORATION, PNC :
BANK, FSB, SUNTRUST MORTGAGE, INC., :
U.S. BANK, N.A., and WELLS FARGO & CO., :
:
        Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

      Defendant Wells Fargo & Co.[1] ("Wells Fargo") respectfully submit this supplemental memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 9(b), 12(b)(1), and 12(b)(6), to dismiss Relator Peter D. Grubea's Third Amended Complaint ("TAC"). *See* ECF No. 29.

---

[1] Wells Fargo & Co. does not service mortgage loans and is not a proper party to this action.

# INTRODUCTION

In 2012, the United States Department of Justice, 49 state attorneys general, the attorney general for the District of Columbia, and other federal and state regulators executed a global settlement (the "National Mortgage Settlement") resolving claims against Wells Fargo and four other servicers arising out of their residential mortgage lending and servicing practices. *See generally* Decl. of Luke A. Connelly ("Connelly Decl."), Ex. A.[2] In the National Mortgage Settlement, Wells Fargo committed over $5 billion and, in exchange, obtained a broad release (the "Release") that the United States District Court for the District of Columbia entered as a Consent Judgment on April 4, 2012. By the Release's clear, express, and unambiguous terms, the United States, including the United States Department of the Treasury, released Wells Fargo from all civil liability in connection with, *inter alia*, any of its residential mortgage servicing conduct that occurred before February 9, 2012.[3] Any claims the Relator is attempting to pursue here that arose from conduct taking place before February 9, 2012 are therefore barred and must be dismissed.

# ARGUMENT

**I.    The United States Released Certain Claims Related to Wells Fargo's Servicing.**

Pursuant to the National Mortgage Settlement's Release, the United States released all civil liability—including under the False Claims Act ("FCA")—for claims based on "Covered

---

[2] Because the National Mortgage Settlement is a publicly available document filed with a court, this Court can take judicial notice of the document and consider it in connection with the motion to dismiss. *See, e.g.*, *Haywood v. City of New York*, No. 16CV5191PACKNF, 2017 WL 4049249, at *4 (S.D.N.Y. Aug. 3, 2017), *report and recommendation adopted*, No. 16CIV5191PACKNF, 2017 WL 4046216 (S.D.N.Y. Sept. 12, 2017) (granting a motion to dismiss after taking judicial notice of a "Stipulation and Order of Settlement and Dismissal" on the basis of a release contained therein, explaining that "courts routinely take judicial notice of documents filed in other courts"); *Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 574 (S.D.N.Y. 2016), *reconsideration denied*, No. 14-CV-3251 (JPO), 2016 WL 2642223 (S.D.N.Y. May 6, 2016) (noting that the court "may take judicial notice of public documents"); *Global Network Commc'ns, Inc., v. City of N.Y.*, 458 F.3d 150, 157 (2d Cir. 2006) (in ruling on a motion to dismiss, courts may take judicial notice of a document filed in another court) (quotations and citation omitted).

[3] Though the Release has a few narrow and carefully crafted exceptions, none apply here.

Servicing Conduct" that had taken place as of 11:59 p.m. (Eastern Standard Time) on February 8, 2012.  *See* Connelly Decl., Ex. A, Release at F-12.  The National Mortgage Settlement broadly defines "Covered Servicing Conduct" as: "***all activities of [Wells Fargo] … directed toward servicing***," and "***includes, but is not limited to***" (1) the "[u]se or supervision of vendors, agents and contract employees, and their activities in connection with … foreclosure," (2) "[q]uality control, quality assurance or compliance or audit testing or oversight related to the Covered Servicing Conduct," and (3) "[r]eporting, certification or registration requirements related to any of the Covered Servicing Conduct."  *See id.* at F-2 through F-6 (emphases added).

## II.     Relator's Claims

On September 4, 2012, Relator Peter D. Grubea filed his original complaint in this matter, under seal, purporting to assert FCA claims against several mortgage servicers based upon allegations that they sought reimbursement from the Department of Housing and Urban Development ("HUD"), the Federal National Mortgage Association ("Fannie Mae"), and the Federal Home Loan Mortgage Corporation ("Freddie Mac") for "illegal and excessive" foreclosure-related expenses, such as title searches, services of process, and publication of legal notices.  Wells Fargo was added as a defendant in the Second Amended Complaint filed on June 27, 2014.  *See* ECF No. 10; *see also* ECF No. 28.  The matter remained under seal until March 27, 2018, when the Government filed its Complaint in Intervention against Rosicki, Rosicki & Associates, P.C., Enterprise Process Service, Inc., and Paramount Land, Inc.  *See* ECF No. 22.  The Government declined to intervene as to Wells Fargo or any other defendants.  *See* ECF No. 33.

On April 3, 2018, Relator filed his TAC, alleging that Wells Fargo, as a servicer of Federal Housing Administration ("FHA"), Fannie Mae, and Freddie Mac loans, (1) "sought excessive

reimbursements" for foreclosure-related expenses, (2) did not "monitor, audit, or control" foreclosure law firms and the foreclosure-related expenses they charged, (3) did not "make any real effort to reduce foreclosure expenses," (4) did not conduct quality control over foreclosure-related expenses, (5) "submitted false annual certifications" to Fannie Mae, Freddie Mac, and/or FHA "with respect to [its] qualifications for participation in Fannie Mae, Freddie Mac, and/or FHA servicing programs," and (6) "falsely certif[ied] … that [its] reimbursement claims were accurate." TAC ¶¶ 8, 117, 120, 151, 496.  Based on those allegations, Relator alleges that Wells Fargo violated the FCA.  *Id*. ¶¶ 495–502, 508–513.  Relator seeks damages and penalties on behalf of the United States, and 30% of the proceeds of any recovery.  *Id*. at 90–91.

### III. The Release Bars Any Claims Based on Servicing Conduct That Had Taken Place As of 11:59 p.m. EST on February 8, 2012.

"Settlement agreements are contracts and must therefore be construed according to general principles of contract law."  *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999) (citation omitted).  And, it is axiomatic that when contractual language is clear and explicit, it governs.  *See, e.g.*, *Mesa Air Group, Inc. v. Dep't of Transp*., 87 F.3d 498, 503 (D.C. Cir. 1996).  Here, Relator's allegations fall squarely within the express terms of the National Mortgage Settlement's Release:

| Relator's Allegation | Released Conduct |
|---|---|
| Wells Fargo "sought excessive reimbursements" for foreclosure-related expenses. | "All activities of [Wells Fargo] … directed toward servicing" |
| Wells Fargo did not "monitor, audit, or control" foreclosure law firms and the foreclosure-related expenses they charged. | "All activities of [Wells Fargo] … directed toward servicing," which "includes, but is not limited to," "the "[u]se or supervision of vendors, agents and contract employees, and their activities in connection with … foreclosure" and "[q]uality control, quality assurance or compliance or audit testing or |

| | oversight related to the Covered Servicing Conduct." |
|---|---|
| Wells Fargo did not conduct quality control over foreclosure-related expenses. | "All activities of [Wells Fargo] … directed toward servicing," "which includes, but is not limited to," "[q]uality control, quality assurance or compliance or audit testing or oversight related to the Covered Servicing Conduct." |
| Wells Fargo "submitted false annual certifications" to Fannie Mae, Freddie Mac, and/or FHA "with respect to [its] qualifications for participation in Fannie Mae, Freddie Mac, and/or FHA servicing programs." | "All activities of [Wells Fargo] …directed toward servicing," "which includes, but is not limited to, "[r]eporting, certification or registration requirements related to any of the Covered Servicing Conduct." |

Indeed, the Relator alleges the very same conduct that is expressly covered by the Release. And, the United States' Release applies to the Relator's claims here because "while the False Claims Act permits relators to control the False Claims Act litigation, the claim itself belongs to the United States." *United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 93 (2d Cir. 2008) ("[T]he Supreme Court determined that a relator's interest in a *qui tam* suit is one as the 'partial assignee' of the claims of the United States," and "observed that the injury, and therefore, the right to bring the claim belongs to the United States.") (citing *Vermont Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 774–75 (2000)). Thus, to the extent the Relator attempts to pursue any claims based on conduct that had taken place before February 9, 2012, those claims are barred and the Relator is prohibited from pursuing them on the Government's behalf.

## CONCLUSION

Wells Fargo settled claims based on the very same conduct Relator alleges here. Accordingly, the Court should enforce the Release and dismiss any claims that are based on conduct by Wells Fargo that occurred before February 9, 2012.

Dated: New York, New York
April 27, 2018

Respectfully submitted,

**WINSTON & STRAWN LLP**

By: *s/ Luke A. Connelly*

Luke A. Connelly
lconnell@winston.com
200 Park Avenue
New York, NY 10166
(212) 294-6882
(212) 294-4700 (fax)

*Attorneys for Wells Fargo & Co.*

OF COUNSEL:

Jack H. Cobb (to be admitted *pro hac vice*)
jcobb@winston.com
Jack M. Knight, Jr. (to be admitted *pro hac vice*)
jknight@winston.com
Stacie C. Knight (to be admitted *pro hac vice*)
sknight@winston.com
Winston & Strawn LLP
300 South Tryon Street
16th Floor
Charlotte, NC 28202
(704) 350-7731
(704) 350-7800 (fax)