UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. PETER D. GRUBEA,<br><br>                            *Plaintiff-Relator*,<br><br>v.<br><br>ROSICKI, ROSICKI & ASSOCIATES, P.C., et al.,<br><br>                            *Defendants*. | Civil Action No. 12 Civ. 7199 (JSR)<br><br>**ECF Case** |

# MEMORANDUM OF LAW IN SUPPORT OF ATTORNEY OUTSOURCING SUPPORT SERVICES, INC.'S AND REO AMERICA ABSTRACT, INC.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT ....................................................................................................................................... 2

I.    The Complaint Fails To State A Claim For A Violation Of The False Claims Act ........... 2

    A.    Grubea Fails To State A Factually False Claim ......................................................... 2

    B.    Grubea Fails To State A Legally False Claim ........................................................... 4

        1.    Grubea Has Not Alleged Any Express Or Implied Certification Made By AOSS or REO ................................................................. 5

        2.    Any Implicit Representations Were Immaterial To The GSEs' Or FHA's Payment Decision ................................................. 6

    C.    Grubea Fails To Establish AOSS Or REO Caused A False Claim ........................... 6

    D.    As A Matter Of Law There Is No Liability For Pre-FERA Claims ........................... 7

    E.    Grubea Fails To Allege Fraud With Particularity ...................................................... 8

II.    Grubea Fails To Allege A Conspiracy ................................................................................ 9

III.    Grubea Fails To Allege A Violation of Reverse False Claims ........................................ 10

CONCLUSION ................................................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allison Engine Co. v. United States ex rel. Sanders,*
   553 U.S. 662, 668-69, 672-73 (2008) ...................................................................................8

*United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.,*
   865 F.3d 71, 82, 86 (2d Cir. 2017)........................................................................................8

*United States ex rel. Colucci v. Beth Israel Med. Ctr.,*
   785 F. Supp. 2d 303, 310, 316 (S.D.N.Y 2011) *aff'd sub nom. Colucci v. Beth
   Israel Med. Ctr.,* 531 F. App'x 118 (2d Cir. 2013) ......................................................... 9-10

*United States ex rel. Garbe v. Kmart Corp.,*
   824 F.3d 632, 642 (7th Cir. 2016) .........................................................................................7

*United States ex rel. Kester v. Novartis Pharm. Corp.,*
   23 F. Supp. 3d 242, 260-61 (S.D.N.Y. 2014) ....................................................................2, 4

*Matusovsky v. Merrill Lynch,*
   186 F. Supp. 2d 397, 399-400 (S.D.N.Y. 2002) ...................................................................3

*Mikes v. Straus,*
   274 F.3d 687, 696-97 (2d Cir. 2001) .................................................................................2-3

*United States ex rel. Searle v. DRS Servs.,*
   No. 13-cv-00402, 2015 WL 6691973, at *13 (E.D. Va. Nov. 2, 2015).................................6

*Sheng v. Time Warner Cable of New York City,*
   No. 09 Civ. 10397 (JSR), 2010 WL 3292680, at *1 n.1
   (S.D.N.Y. Aug. 18, 2010)(Rakoff, J.)...................................................................................3

*State of Colorado v. The Castle Law Grp.,*
   No. 2014 CV 32763, 2017 WL 3449241, at *28 (D. Co. April 4, 2017) ..............................4

*United States v. Countrywide Fin. Corp.,*
   961 F.Supp.2d 598, 609 (S.D.N.Y. 2013).............................................................................7

*Universal Health Servs. v. United States ex rel. Escobar,*
   136 S.Ct. 1989, 1996, 2003-04 (2016) ...............................................................................3, 6

*Wexner v. First Manhattan Co.,*
   902 F.2d 169, 172 (2d Cir. 1990)..........................................................................................8

*U.S. ex rel. Wood v. Allergan, Inc.,*
   246 F. Supp. 3d 772, 807-08, 825-26, 827, 829 (S.D.N.Y. 2017)...................................7, 10

**Statutes**

False Claims Act, 31 U.S.C. §§ 3729-3733 ................................................................................. *passim*

Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, 123 Stat. 1617 (codified as amended in scattered sections of 31 U.S.C.) .................................................7

**Other Authorities**

Fed. R. Civ. Pro. 9(b) ..................................................................................................................1, 8

Fed. R. Civ. Pro. 12(b)(6) ...........................................................................................................1, 3

## PRELIMINARY STATEMENT

Grubea attempts to transform a legitimate and disclosed business affiliation between Attorney Outsourcing Support Services, Inc. ("AOSS") and REO America Abstract, Inc. ("REO") and McCabe, Weisberg & Conway, P.C. ("MWC") into the basis for a False Claims Act, 31 U.S.C. §§ 3729-3733 ("FCA") claim for treble damages. Grubea's repetition of conclusory "information and belief" allegations of fraud in the form of unspecified "overcharging" cannot create a fraud where none exists. In the first instance, Grubea's claims are conclusorily pled and insufficient under Federal Rule of Civil Procedure 9(b). Moreover, Grubea's allegations are contradicted by the very documents and Court filings on which he purports to rely. AOSS and REO have made no factually or legally false statements or omissions and in any event, any statements or conduct by AOSS and REO (or anyone else for that matter) were not material to the GSEs' or FHA's decision to pay any claims. Grubea's claims for conspiracy and reverse false claims similarly fail. Notwithstanding its over 500 paragraphs and 90 plus pages, Grubea's Complaint has failed to plead any ground for relief against AOSS and REO, who therefore respectfully move this Court to dismiss Grubea's claims pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

To conserve judicial resources and as suggested by the Court, this memorandum focuses on arguments particular to AOSS and REO, and AOSS and REO respectfully refer the Court to the background, procedural history, and legal standards contained in the Servicers' and MWC's respective memoranda of law in support of their motions to dismiss, and explicitly adopt and join the arguments contained therein as they apply to AOSS and REO.[1]

---

[1] In the event and to the extent of any contradiction between arguments made in the Servicers' brief and the arguments made herein, AOSS and REO rely on the arguments made herein and in MWC's brief.

# ARGUMENT

## I. The Complaint Fails To State A Claim For A Violation Of The False Claims Act

It is beyond cavil that in order to establish a false claim under the FCA, Grubea must demonstrate the factual falsity or legal falsity of the claims submitted. *United States ex rel. Kester v. Novartis Pharm. Corp.*, 23 F. Supp. 3d 242, 260-61 (S.D.N.Y. 2014). Yet, in the present case, Grubea seeks to impose treble damages liability upon AOSS and REO without first alleging these basic prerequisites. Indeed, closer scrutiny of the Third Amended Complaint [Doc. 29] ("Complaint" or "TAC") reveals that Grubea can demonstrate neither. Instead, Grubea relies upon the bald allegation that AOSS and REO are "affiliates" of MWC in an attempt to manufacture a fraud where none exists. Indeed, the affiliations complained of and which lie at the heart of the alleged fraudulent scheme were fully disclosed and the Complaint contains no allegations that they were not widely disclosed to the Servicers, the GSEs, and FHA. At its core, Grubea's claims against AOSS and REO are that by submitting invoices for payment to MWC that were not factually false, and making no misrepresentations, they violated some "every efforts" clause within someone else's contract or guidance documents, which is insufficient to impose False Claims Act liability.

### A. Grubea Fails to State A Factually False Claim

A properly stated claim for factual falsity requires "an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided." *Mikes*

---

We join in MWC's argument that the Court lacks jurisdiction to the extent that the government does not invoke its opposition to dismissal on public disclosure grounds under 31 U.S.C. § 3730(e)(4)(A). We understand that the government has stated an intention to invoke its opposition to dismissal, but has not yet done so in writing nor has it indicated as to which defendants it may seek to oppose dismissal. Even if the government opposes dismissal as to MWC, AOSS, and REO, AOSS and REO assert that this bar operates to preclude claims prior to the enactment of this provision on March 23, 2010.

*v. Straus*, 274 F.3d 687, 696-97 (2d Cir. 2001), *abrogated on other grounds by Universal Health Servs. v. United States ex rel. Escobar*, 136 S. Ct. 1989 (2016). Grubea has alleged neither. Because Grubea failed to adequately allege that AOSS or REO charged for work that was not performed, his claim must fail unless he has properly alleged that the services were "inaccurately described." He has not. Not one of the allegations directed at the "McCabe Defendants" alleged inaccurately described work. TAC ¶¶ 138-147. Neither Grubea's allegations that the Servicers paid for "overpriced vendor services" nor Grubea's allegations that charges were incurred at "supra-market prices," in contravention of the alleged contractual agreements between the GSEs and FHA and the Servicers, is an "inaccurate description." *See* TAC ¶¶ 10-11. Further, although the Complaint conclusorily asserts that on information and belief expenses billed by AOSS or REO were "unnecessary," Grubea does not allege a single fact, let alone the precise facts he would need to allege, to support his claim.

In fact, the only three alleged representative example foreclosure properties conclusively disprove Grubea's theory because the allegations, at least as they purport to relate to AOSS, are in fact factually false and are contradicted by public court records and the very documents upon which Grubea purports to rely.[2] Specifically, when one examines those records it is plain that AOSS did not perform nor did it bill for any service, let alone participate in a fraud upon the government.[3] *See* TAC ¶¶ 302-310, 325-333, 400-406.

---

[2] This Court may consider documents "integral to, or explicitly referenced in, the pleading" and "[i]f a plaintiff's allegations are contradicted by such a document, those allegations are insufficient to defeat a motion to dismiss." *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 399–400 (S.D.N.Y. 2002) (citations omitted). In addition, in connection with a Rule 12(b)(6) motion, the Court may take judicial notice of matters of public record, including pleadings in another action. *See Sheng v. Time Warner Cable of New York City*, No. 09 Civ. 10397 (JSR), 2010 WL 3292680, at *1 n.1 (S.D.N.Y. Aug. 18, 2010) (Rakoff, J.).

[3] It is also noteworthy that after an over four year investigation, the government has declined to intervene as to McCabe, AOSS, and REO. *See, e.g* Complaint-In-Intervention [Doc. 22].

3

With respect to the "Katsura Court Property" and the "O'Brien Avenue Property", Grubea alleges that MWC contracted with AOSS to bill for service of process and that AOSS invoiced MWC, who passed the invoiced amount to a Servicer. *See* TAC ¶¶ 302-310, 400-406. The invoices for the Katsura Court Property and O'Brien Avenue Property demonstrate that AOSS was not involved at all; an unrelated entity, Servium, performed the service of process for those properties, and the amount Servium billed is the exact amount billed by MWC. *See* Decl. of Margaret Gairo in Supp. of Mot. to Dismiss the Third Am. Compl. by Def. MWC at Exs. B, C, D, G, H, I ("Gairo Decl.").

Further, with respect to the third and final property, the Columbia Street Property (*See* TAC ¶¶ 325-333), service of process was made Supreme Processing Serving, LLC, on February 9, 2010. Gairo Decl. at Ex. E. MWC did not even enter the case until nearly *two years later* on January 11, 2012, when it substituted as attorneys for PNC Bank and replaced prior counsel who initiated the action. *Id.* at Ex. F. Contrary to Grubea's assertions as to the contents of the invoices or based upon the judicially noticed pleadings in the underlying action, the transactions did not involve AOSS and Grubea's claims must be dismissed.

Lastly, the mere choice of McCabe to use AOSS and REO in order to "generate profits" (TAC ¶ 145) cannot, without more, constitute actionable falsity under the FCA, particularly where, as here, those relationships have been fully disclosed. *See State of Colorado v. The Castle Law Grp.*, No. 2014 CV 32763, 2017 WL 3449241, at *28 (D. Co. April 4, 2017) ("the desire to make as much money as possible is by itself neither deceptive nor unlawful").

### B. Grubea Fails to State A Legally False Claim

Grubea similarly fails to allege legal falsity. Legal falsity is demonstrated not through "misrepresent[ation of] the goods and services provided," but instead by false certification of "compliance with a statute, regulation, or contractual provision." *Kester*, 23 F. Supp. 3d at 261.

4

Grubea does not allege that AOSS or REO certified any compliance with a statute, regulation, or contractual provision. Instead Grubea alleges that "[u]pon information and belief, the McCabe Defendants billed the Bank Defendants for these unnecessary and excessive charges" – for work MWC, AOSS, and REO *actually performed* – "with the intention, expectation, knowledge, and belief that the Bank Defendants would seek reimbursement from the Government for these charges." TAC ¶ 146. These allegations fall far short of what is required to establish legal falsity.

### 1. Grubea Has Not Alleged Any Express Or Implied Certification Made By AOSS Or REO

Grubea fails to allege that AOSS or REO made any certification, either implicit or explicit. Grubea also fails to allege that AOSS or REO caused MWC (or any other entity, including the Servicers) to make such a certification. Nor do Grubea's insinuations about the business relationships between MWC and AOSS and REO (TAC ¶¶ 11, 116, 118) – business relationships which were fully disclosed to the Servicers, and which Grubea did not and cannot allege were not fully disclosed – suffice to allege such a misrepresentation. But even if another party were to have made any certifications, nothing that *AOSS or REO* are alleged to have done could have caused such a certification to be made.

There are no allegations that AOSS or REO themselves had any statutory, regulatory, or contractual requirements to "make every effort to reduce default-related foreclosure expenses;" rather, the Complaint alleges that such an obligation fell on the Servicers. TAC ¶ 62. Moreover, Grubea's general and unsupported allegation that the Law Firm Defendants "were aware of the Fannie Mae, Freddie Mac, and FHA rules limiting fees to necessary and reasonable costs" (TAC ¶ 114) cannot impose a contractual obligation upon AOSS or REO where one does not otherwise exist. In the absence of any such certification, Grubea's Complaint must fail.

### 2. Any Implicit Representations Were Immaterial To The GSEs' Or FHA's Payment Decision

Assuming that Grubea had alleged such a false certification, Grubea's Complaint still must fail because Grubea cannot, as a matter of law, plead that such a certification was material to the "the government's decision to provide payment" through a showing that the GSEs or FHA "would have been influenced by these alleged defects." *United States ex rel. Searle v. DRS Servs.*, No. 13-cv-00402, 2015 WL 6691973, at *13 (E.D. Va. Nov. 2, 2015). In other words, Grubea "would have to show that if the government knew about these defects, it would not have paid [defendant]." *Id.*

The allegations in the Complaint are wholly deficient to meet the "rigorous" and "demanding" materiality standard set forth under *Escobar*. First, as discussed, the alleged affiliate relationship between McCabe, AOSS, and REO was fully disclosed. Second, there are no allegations that the amounts billed for the services provided were above those identified as the maximum amounts allowed by the GSEs and FHA. Finally, the Complaint specifically alleges that the United States Attorney for the Southern District of New York issued a press release announcing the very scheme alleged in the Complaint in July 2014. TAC ¶ 159. The Complaint avers that the GSEs and FHA paid claims after that date, including one arising from an action in which AOSS is alleged to have been involved a year later in mid-2015. *Id.* ¶ 404. *See Escobar*, 136 S.Ct. at 2003-04 (payment of claim despite "actual knowledge that certain requirements were violated" is "very strong evidence that those requirements were not material").

### C. Grubea Fails to Establish AOSS Or REO Caused a False Claim

Where, as here, AOSS and REO are not alleged to have made any false claim themselves, Grubea must instead demonstrate that AOSS or REO "directly induce[d] the submission of false or fraudulent claims" by the Servicers. *Escobar*, 136 S.Ct. at 1996. Yet beyond performing and

6

billing for various foreclosure-related services, the Complaint is bereft of any allegation of how AOSS or REO induced the submission of a false claim. In short, Grubea does not allege that AOSS and REO did not perform the services billed, nor that they misrepresented the nature of those services. In the absence of such an allegation, AOSS and REO cannot be liable for inducing a false claim. This point is best illustrated by contrasting these facts with those that sufficiently pleaded the inducement of a false claim. *Compare, e.g. U.S. ex rel. Wood v. Allergan, Inc.*, 246 F. Supp. 3d 772, 807-08 (S.D.N.Y. 2017). There, the fraudulent kickback scheme of the "upstream" entity, Allergan, was imputed to the "downstream" pharmacies, who were the entities that actually submitted the claims to the government. *Id.* Here, AOSS and REO, as "upstream" entities, provided neither a factually false claim, nor any misrepresentation, nor any explicit or implied certification to anyone, and did not have any communication or involvement directly with the Servicers, in any event.

D.  **As A Matter Of Law There Is No Liability For Pre-FERA Claims**

Courts have held that claims not submitted directly to the government are not cognizable under the FCA unless the claims were submitted after May 20, 2009, the effective date of the Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, 123 Stat. 1617 (codified as amended in scattered sections of 31 U.S.C.) ("FERA"); *see also United States ex rel. Garbe v. Kmart Corp.*, 824 F.3d 632, 642 (7th Cir. 2016) (Medicare claims made to a fiscal intermediary prior to the FERA amendments were not false claims under 31 U.S.C. § 3729(a)(1) because the prior version of the statute required presentment to an officer or employee of the government); *United States v. Countrywide Fin. Corp.*, 961 F.Supp.2d 598, 609 (S.D.N.Y. 2013) ("Prior to May 20, 2009, the False Claims Act did not encompass such claims when made to entities like Fannie Mae and Freddie Mac."). As such, there can be no liability for claims under § 3729(a)(1)(A) prior to May 20, 2009. *Id.*

7

Even if MWC, AOSS, or REO had made any false statements or claims, any statement by AOSS and REO was made only in order to get their invoices paid by MWC, not the GSEs or FHA. Therefore, they have no liability for pre-FERA claims under § 3729(a)(1)(B) or § 3729(a)(1)(C) given there was no intent that any falsehood be for the purpose of payment or approval by the government or to defraud the government. *See Allison Engine Co. v. United States ex rel. Sanders*, 553 U.S. 662, 668-69, 672-73 (2008).

### E. Grubea Fails To Allege Fraud With Particularity

Grubea's allegations against AOSS and REO – which are made almost exclusively on information and belief – fall far short of stating "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). When pleading on information and belief, "[a] relator must make allegations that lead to a strong inference that specific claims were indeed submitted and also plead that the particulars of those claims were peculiarly within the opposing party's knowledge." *United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 86 (2d Cir. 2017). Grubea's Complaint fails to identify any "specific facts supporting a strong inference of fraud," and instead lodges merely the type of "speculation and conclusory allegations" as to AOSS's and REO's alleged conduct that have been held insufficient to satisfy Rule 9(b). *Id.* at 82, 86 (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990)).

While the Complaint conclusorily asserts that "on information and belief" AOSS and REO billed for "unnecessary services," Grubea fails to allege even a single type of unnecessary service billed by either AOSS or REO. In contrast, Grubea – albeit without particularity – alleges that the Rosicki Law Firm billed for a list of four types of unnecessary services. *Compare* TAC ¶¶ 115, 118 with TAC ¶ 124.

8

Instead, the Complaint relies only on allegations that AOSS and REO charged "excessive" fees that were "above market rates" for title searches and personal service. TAC ¶ 141. Grubea fails to allege any particular facts as to how the allegedly super-market fees were excessive. AOSS and/or REO are identified in just three bare-bones examples of the forty-two alleged foreclosed properties. First, the Complaint alleges that AOSS invoiced "above market rates" for each of the three transactions, but does not even identify the invoice price (or even the extent above market rates). TAC ¶¶ 305, 328, 403. Further, the Complaint alleges zero facts as to the bases for the allegation that the market rates were $20-$40 per person. In addition, the Complaint alleges on information and belief that AOSS hired "another process service company to serve each person at market rates and simply marked up those invoices," without any of the requisite who, what, where, and when to support allegations of fraud. *Id.* Grubea fails to allege any facts regarding the scope of the relevant market, AOSS's alleged competitors, or what those competitors charged – facts that are not within AOSS's peculiar knowledge – and are essential to support Grubea's claims.

The allegations involving REO are contained in just two of the examples provided by Grubea and fail for the same reasons. Although the allegations allege an amount submitted by REO for title work, they merely assert that this amount was "well above market rates," again without providing any allegations as to factual bases for those market rates. TAC ¶¶ 307, 330.

## II.  Grubea Fails To Allege a Conspiracy

Grubea's claim for conspiracy must also fail for failure to allege a false claim. In order to allege a claim for conspiracy "a relator must allege that (1) the defendant knowingly conspired with one or more persons to get a false or fraudulent claim allowed or paid by the United States and (2) that one or more of the coconspirators performed any act to effect the object of the conspiracy." *United States ex rel. Colucci v. Beth Israel Med. Ctr.*, 785 F. Supp. 2d 303, 310

9

(S.D.N.Y 2011) (internal quotation marks omitted) *aff'd sub nom. Colucci v. Beth Israel Med. Ctr.*, 531 F. App'x 118 (2d Cir. 2013).  A relator cannot plead a conspiracy without first having pled both a "false or fraudulent" claim *and* then alleging "knowing" fraudulent conduct. *Id.* Because Grubea's allegations fail for lack of fraud, it also fails to satisfy the "knowing" requirement, which requires action despite "alleg[ing] circumstances showing that defendants knew or should have known" that their conduct was false or fraudulent. *Compare Colucci*, 785 F. Supp. 2d at 316 (holding that relator's "inability to identify any regulation violated by defendants demonstrates that defendants' interpretation of the [] regulations was not unreasonable, and thus not knowingly false or fraudulent"), *with Allergan*, 246 F. Supp. 3d at 825-26, 829 (relator "plausibly allege[d] that Allergan acted at least with reckless disregard to the possibility that its specific actions were in violation of the AKS").

### III. Grubea Fails To Allege a Violation of Reverse False Claims

To prove a "reverse false claim" under subsection (a)(1)(G), a relator must show: "(1) proof that the defendant made a false record or statement (2) at a time that the defendant had a presently-existing obligation to the government, i.e., a duty to pay money or property.  A complaint that makes no mention of any financial obligation that the [defendant] owed to the government and does not specifically reference any false records or statements used to decrease such an obligation must be dismissed." *Allergan, Inc.*, 246 F. Supp. 3d at 827.  Because MWC, AOSS, and REO had no contractual or regulatory obligations to repay the government, they cannot be liable for a reverse false claim and this count must be dismissed as to them.

### CONCLUSION

For the foregoing reasons, including those reasons incorporated by reference herein, AOSS and REO respectfully request that the Third Amended Complaint be dismissed with prejudice.

Dated:  April 27, 2018                                    Respectfully submitted,

                                                          MONTGOMERY MCCRACKEN WALKER &
                                                                RHOADS LLP

                                                          By: /s/ Mark B. Sheppard

                                                          Mark B. Sheppard
                                                          Lathrop B. Nelson, III[4]
                                                          Stephanie K. Benecchi
                                                          123 South Broad Street
                                                          Philadelphia, PA 19109[5]
                                                          Telephone: (215) 772-1500
                                                          Facsimilie: (215) 772-7620
                                                          msheppard@mmwr.com
                                                          lnelson@mmwr.com
                                                          sbenecchi@mmwr.com

                                                          *Attorneys for Defendants Attorney Outsourcing
                                                          Support Services, Inc. and REO American
                                                          Abstract, Inc.*

---

[4] Admitted in New York State; general admission before the Southern District of New York is currently pending.

[5] Please note that effective May 7, 2018, Montgomery McCracken's Philadelphia Office will be located at 1735 Market Street, Philadelphia, PA 19103.  Email addresses and telephone/fax numbers will not change.