**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. PETER D. GRUBEA,<br><br>*Plaintiffs,*<br><br>v.<br><br>ROSICKI, ROSICKI & ASSOCIATES, P.C., PARAMOUNT LAND, INC., THRESHOLD LAND INC., ENTERPRISE PROCESS SERVICE, INC., MCCABE, WEISBERG, & CONWAY, P.C., ATTORNEY OUTSOURCING SUPPORT SERVICES, INC., REO AMERICA ABSTRACT, INC., CENLAR FSB, CITIGROUP, INC., CITIBANK, N.A., CITIMORTGAGE, INC., DITECH FINANCIAL LLC, EVERHOME MORTGAGE COMPANY, EVERBANK FSB, FLAGSTAR BANK, FSB, GREEN TREE CREDIT, JAMES B. NUTTER & CO., METLIFE BANK, N.A., NATIONSTAR MORTGAGE LLC, ONEWEST BANK FSB, PHH MORTGAGE CORPORATION, PNC BANK, FSB, SUNTRUST MORTGAGE, INC., U.S. BANK, N.A., and WELLS FARGO & CO.,<br><br>*Defendants.* | 12 Civ. 7199 (JSR) |
| UNITED STATES OF AMERICA<br><br>*Intervenor-Plaintiff,*<br><br>v.<br><br>ROSICKI, ROSICKI & ASSOCIATES, P.C., PARAMOUNT LAND, INC., THRESHOLD LAND INC.,<br><br>*Defendants.* | |
| UNITED STATES OF AMERICA ex rel. PETER D. GRUBEA,<br><br>*Plaintiffs,*<br><br>v.<br><br>BANK OF AMERICA, N.A., J.P. MORGAN CHASE & CO., and JPMORGAN CHASE BANK, N.A.,<br><br>*Defendants.* | 13 Civ. 1467 (JSR) |

**RELATOR'S MEMORANDUM OF LAW IN SUPPORT OF HIS**
**MOTION FOR RECONSIDERATION**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

STANDARDS FOR RECONSIDERATION ............................................................... 6

ARGUMENT .................................................................................................................... 7

      I.      Relator Should be Granted Leave to Replead as to Certain Servicer Defendants .. 7

      II.     Relator Should be Granted Leave to Replead as to Chase.................................... 13

CONCLUSION ................................................................................................................. 15

## **TABLE OF AUTHORITIES**

**Page(s)**

<u>**Cases**</u>

*Acito v. IMCERA Group,*
47 F.3d 47 (2d Cir. 1995) ........................................................................................7

*Cresci v. Mohawk Valley Cmty. Coll.,*
693 F. App'x 21 (2d Cir. 2017) ...............................................................................9

*DietGoal Innovations LLC v. Wegmans Food Markets Inc.,*
2:14cv143 (E.D. Va. June 5, 2014).........................................................................8

*First City, Texas-Houston, N.A. v. Rafidain Bank,*
131 F. Supp. 2d 540 (S.D.N.Y. 2001)..................................................................6, 8

*Foman v. Davis,*
371 U.S. 178 (1962).................................................................................................7

*Hemming v. Alfin Fragrances, Inc.,*
1987 WL 6906 (S.D.N.Y. Feb. 10, 1987)..............................................................13

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust,*
729 F.3d 99 (2d Cir. 2013)......................................................................................6

*Lewis v. Rosenfeld,*
145 F. Supp. 2d 341 (S.D.N.Y. 2001)......................................................................8

*Liberty Media Corp. v. Vivendi Universal, S.A.,*
842 F. Supp. 2d 587 (S.D.N.Y. 2012)......................................................................7

*Loreley Fin. No. 3 v. Wells Fargo Secy's,*
797 F.3d 160 (2d Cir. 2015)................................................................................9, 10

*Madonna v. U.S.,*
878 F.2d 62 (2d Cir. 1989).....................................................................................12

*Nabisco v. Warner-Lambert Co.,*
32 F. Supp. 2d 690 (S.D.N.Y. 1999)........................................................................6

*In re Nowak,*
No. 1-11-11080-CLB (Bankr. W.D.N.Y.)........................................................14, 15

*Official Publ'ns, Inc. v. Kable News Co.,*
884 F.2d 664 (2d Cir. 1989).....................................................................................1

*Olsen v. Pratt & Whitney Aircraft,*
   136 F.3d 327 (2d Cir. 1998)........................................................................8

*Parmar v. Jeetish Imports, Inc.,*
   180 F.3d 401 (2d Cir. 1999)........................................................................6

*Pasternack v. Shrader,*
   863 F.3d 162 (2d Cir. 2017)....................................................................1, 7

*Rosicki, Rosicki & Assocs. v. Grubea,*
   Index No. 5107/2012 (Sup. Ct. Nassau Co.).............................................14

*Spencer v. Casavilla,*
   903 F.2d 171 (2d Cir. 1990)........................................................................6

*U.S. ex rel. Steury v. Cardinal Health, Inc.,*
   625 F.3d 262 (5th Cir. 2010) ......................................................................9

*U.S. ex rel. Underwood v. Genentech, Inc.,*
   720 F. Supp. 2d 671 (E.D. Pa. 2010) ..............................................3, 12, 13

*United States of Am. ex rel. Vassallo v. Rural/Metro Corp.,*
   No. CV-15-00119-PHX-SRB, 2017 WL 4570706 (D. Ariz. Oct. 5, 2017)........3, 12

*United States ex rel. Banigan v. Organon USA, Inc.,*
   Civil Action No. 07-12153-RWZ, 2011 WL 794915 (D. Mass. Feb. 28, 2011)................3, 12

*United States ex rel. Chorches v. American Medical Response, Inc.,*
   865 F.3d 71 (2d Cir. 2017)........................................................................13

*United States ex rel. O'Donnell v. Countrywide Fin. Corp.,*
   961 F. Supp. 2d 598 (S.D.N.Y. 2013)..........................................................9

*United States ex rel. Pilon v. Martin Marietta Corp.,*
   60 F.3d 995 (2d Cir. 1995)..........................................................................2

*United States v. Huron Consulting Group, Inc.,*
   09 Civ. 1800 (JSR), 2010 U.S. Dist. LEXIS 97423 (S.D.N.Y. Aug. 25, 2010) ......................7

*United States v. LoRosso,*
   695 F.2d 45 (2d Cir. 1982)..........................................................................7

*Vassallo v. Rural/Metro Corp.,*
   104 Fed. R. Evid. Serv. 854 (D. Ariz. 2017) ..............................................3

*Wight v. BankAmerica Corp.,*
   219 F.3d 79 (2d Cir. 2000)..........................................................................7

iii

*Williams v. Citigroup Inc.*,
    659 F.3d 208 (2d Cir. 2011)...............................................................................7

## Statutes

31 U.S.C. § 3733....................................................................................................2

31 U.S.C. § 3733(a)...............................................................................................2

31 U.S.C. § 3733(a)(1)(D)......................................................................................2

## Other Authorities

Fed. R. Civ. P. 15...................................................................................................1

Fed. R. Civ. P. 15(a)...............................................................................................7

Fed. R. Civ. P. 54(b)...............................................................................................7

Local Civ. R. 6.3................................................................................................3, 6

Rule 9(b) .......................................................................................................*passim*

## INTRODUCTION

Relator Peter Grubea seeks reconsideration of the Court's June 23, 2018 Opinion and Order solely for leave to replead more particularized allegations against seven of the sixteen previously-named Servicer Defendants: Bank of America, Chase, Wells Fargo, Citi, Nationstar, Flagstar, and U.S. Bank. Relator submits that the additional allegations will remedy the deficiencies identified by the Court in its Rule 9(b) analysis, and that the case against those defendants should be allowed to proceed.

Federal Rule of Civil Procedure 15 and Second Circuit precedent all but require a Court to give a party the opportunity to replead at least once after facing the first challenge to its pleading. *See Pasternack v. Shrader*, 863 F.3d 162, 175 (2d Cir. 2017) ("Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend." (internal quotation marks omitted)); *Official Publ'ns, Inc. v. Kable News Co.*, 884 F.2d 664, 669 (2d Cir. 1989) ("where [a] complaint is deficient under Rule 9(b), leave to amend is usually afforded." (internal quotation marks omitted)). The Court acknowledged as much during the parties' initial conference. *See* Apr. 17, 2018 Tr. at 4:4-16 ("If I were to dismiss at this early stage of the litigation a case on the basis of failure to replead with particularity, then under the law of the Second Circuit I would be not quite compelled—but close to it—to grant leave to file an additional complaint."); *id.* at 12:14-20 ("if [the Court were to] dismiss on that ground [9(b)], the likelihood is extremely high that I would allow repleading in that respect").

Relator should be permitted an opportunity to replead here. As explained below, if permitted, Relator intends to amend his allegations against certain Servicer Defendants in two ways. First, as to Bank of America, Chase, Wells Fargo, Citi, Nationstar, Flagstar, and U.S. Bank, Relator would seek to add those particularized allegations that the Court found lacking in its June 23, 2018 Opinion and Order. Relator has details on each of the points identified by the

Court as critical—how defendants improperly reviewed and submitted claims, the failings in their quality control procedures, and the defects in their oversight of law firms and vendors—and has already prepared amendments particularizing those details. Relator learned those details during the investigation phase of this proceeding from defendants' own records and information. *See* 31 U.S.C. § 3733(a) (permitting Government to share *qui tam* defendants' productions with relators). In prior complaints, Relator refrained from relying on that information in accordance with the U.S. Attorney's Office's understandable preference to treat investigation materials as confidential. But Relator has now submitted to the Government discovery requests seeking the reproduction of those materials.

Second and separately, with respect to the Chase defendants, Relator seeks to add allegations based on conversations he had with counsel for Chase in which it was made clear that Chase's legal department at the bank knew of Relator's allegations against the Rosicki firm at least as far back in 2012 but took no steps to curb its abuses.

## BACKGROUND

These are False Claims Act *qui tam* suits, initially filed by Relator in 2012 and 2013, in which the Government has intervened as to particular claims. Until 2018, this case remained under seal "to allow the Government an adequate opportunity to fully evaluate" and investigate the claims. *United States ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995, 998-99 (2d Cir. 1995). During that period, the False Claims Act authorized the Government to serve subpoenas. *See, e.g.*, 31 U.S.C. § 3733 (authorizing civil investigative demands). The Government did so, and the Servicer Defendants produced various materials, as the parties discussed with the Court at the initial (post-unsealing) conference on April 17, 2018. *See* Apr. 17, 2018 Tr. at 16:6-19:19.

The False Claims Act allows the Government to share the fruits of its investigation, including subpoenaed information, with relators. *See* 31 U.S.C. § 3733(a)(1)(D) (permitting

disclosure to relator). The law also permits relators to use such information to amend their pleadings. *See, e.g.*, *Vassallo v. Rural/Metro Corp.*, 104 Fed. R. Evid. Serv. 854, *5 (D. Ariz. 2017) ("courts . . . appear united in their allowance of amended complaints based on information gleaned from government investigations"); *United States ex rel. Banigan v. Organon USA, Inc.*, Civil Action No. 07-12153-RWZ, 2011 WL 794915, at *1 (D. Mass. Feb. 28, 2011) ("a relator may reinforce the complaint with information obtained from government documents"); *United States ex rel. Underwood v. Genentech Inc.*, 720 F. Supp. 2d 671, 679-80 (E.D. Pa. 2010). As the Government has elsewhere explained, when the Justice Department "shares responsive information with relators, as it is expressly permitted to do by statute, relators are not expected to 'unlearn'—and in fact, may use—information gleaned from CID responses," *see* Gov't Mem., Docket 97 at 8, *United States of Am. ex rel. Vassallo v. Rural/Metro Corp.*, No. CV-15-00119-PHX-SRB (D. Ariz. Oct. 5, 2017) ("Gov't *Vassallo* Mem.").[1]

Here, however, the U.S. Attorney's Office for the Southern District of New York has a policy of keeping investigation-phase materials confidential. The U.S. Attorney's Office shared information with Relator pursuant to a sharing agreement (the "Sharing Agreement"). Based on discussions with the U.S. Attorney's Office regarding the scope of the Sharing Agreement, Relator, in prior pleadings, has not relied on any information learned during the investigation phase.[2]

At the initial April 17 conference, where the Servicer Defendants raised Rule 9(b) as a basis for dismissal, Relator sought leave to discover these investigation-obtained materials.

---

[1] Local Rule 6.3, which governs motions to reconsider, states that "[n]o affidavits shall be filed by any party" on such a motion, "unless directed by the Court." For this reason, Relator has not included the Gov't's *Vassallo* Memorandum, but will provide a copy to the Court if so directed.

[2] Prior amendments were made for other reasons, including to join or remove parties.

Before staying discovery, the Court suggested that the Government could voluntarily turn the materials over to Relator for use in pleading, but the Government declined in light of its policies. *See* Apr. 17, 2018 Tr. at 16:18-18:19. Because Relator believed that the Complaints satisfied Rule 9(b) as drafted, Relator did not press the issue further at the time. Had Relator known he would not be permitted to replead using such information following a Rule 9(b) dismissal, Relator would have made a formal motion then for a limited exception to the discovery stay so that he could immediately pursue the investigative materials in an abundance of caution.

At the same conference, the Court observed that, if it granted any Rule 9(b) motion, it would almost certainly permit repleading. The Court explained that if it "were to dismiss at this early stage of the litigation a case on the basis of failure to replead with particularity, then under the law of the Second Circuit I would be not quite compelled—but close to it—to grant leave to file an additional complaint," and, likewise, if it were to "dismiss on that ground, the likelihood is extremely high that I would allow repleading in that respect." *See* Apr. 17, 2018 Tr. at 4:4-16; 12:14-20. Relator stated his position "that plaintiff should have the opportunity to replead the complaint," either "upon seeing a motion to dismiss" or "upon the Court's decision there." *Id.* at 6:17-19. The Servicer Defendants opposed any repleading. But the Court denied their request, and the Court set a deadline for further amendments after any decision on the motion to dismiss. *Id.* at 20:13-18. The Servicer Defendants neither then, nor in subsequent briefing, cited any authority supporting a Rule 9(b) dismissal with prejudice and without leave to replead. That question was not briefed.

While that question was not briefed, the Court appears to have understood one oral argument colloquy as stating what Relator might be able to plead, even though Relator did not understand the colloquy that way.  The Court asked counsel what information supported the

information-and-belief allegations pleaded in Relator's *current* Complaints. See May 25, 2018 Hr'g Tr. at 41:16-20 ("I think that part of their complaint, and it was something that was of concern to the Court, is how much of your allegations against the servicer defendants are based on information and belief. And I guess my question is, what was the information part of that that you relied on?"). To respect the U.S. Attorney's Office's policies, Relator's complaints avoided reliance on information from the Government's investigation. Counsel thus did not point to any such materials as information supporting its then-current complaints. Relator's counsel explained what information Relator did and could use in that iteration of his pleadings at the time. *Id.* at 41: 21-47:9. The Court did not ask (and counsel for Relator therefore did not describe) what additional material Relator could potentially use to replead against the Servicer Defendants.

By opinion dated June 23, 2018, this Court held that Relator failed to plead its case against the Servicer Defendants with particularity, and the Court denied leave to replead. The Court found that Relator pled "'nothing at all' with respect to how each individual defendant 'did or did not perform its obligations,'" *id.* at 26-27, and, in particular, failed to plead: (i) "information about whether the Servicer Defendants actually passed on these charges to the Government," *id.* at 25; (ii) "what compliance systems the Servicers did or did not have in place," *id.*; (iii) "whether and to what extent each Servicer Defendant did or did not monitor foreclosure costs," *id.* at 24 n.8; or (iv) particulars as to whether the Servicers "failed to conduct quality control," *id.* at 26 n.9. The Court denied leave to replead because "Relator has had ample opportunity to plead every possible factual basis for scienter, and was not able, even at oral argument, to provide more than is discussed above." Yet Relator was not given the chance to replead after seeing any motion to dismiss (let alone the Court's ruling on it), and was never asked what information Relator might use to replead if given the opportunity.

Relator has prepared amendments against seven of the Servicer Defendants to address each of the particulars that the Court found lacking. Relator seeks leave to file those pleadings as soon as it receives reproduction of certain discovery from the Government. Discovery commenced on June 23, 2018. Prior to then, the Court had stayed discovery through the issuance of its opinion and order allowing the case to move forward on claims against various law firm-related entities, who served as counsel to the Servicer Defendants. On July 6, 2018, Relator served the Government with a request for production of the materials gathered through its investigation.[3] Because Relator already has reviewed the requested materials (and cannot "unlearn" them) and because he has already prepared his amendments to satisfy the Court's opinion, Relator is prepared to file his amendments as soon as he receives (or is deemed to receive) the requested materials from the Government.

## STANDARDS FOR RECONSIDERATION

Under Local Rule 6.3, a party seeking reconsideration must set "forth concisely the matters or controlling decisions which counsel believes the Court overlooked." Local Civ. R. 6.3. Reconsideration is properly granted where the moving party "identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 105 (2d Cir. 2013).

In addition, the Court remains free, for any reason, "to reconsider its ruling at any time before the entry of a final judgment." *Spencer v. Casavilla*, 903 F.2d 171, 176 (2d Cir. 1990); *see also Parmar v. Jeetish Imports, Inc.*, 180 F.3d 401, 402 (2d Cir. 1999); *First City, Texas-Houston, N.A. v. Rafidain Bank*, 131 F. Supp. 2d 540, 543 (S.D.N.Y. 2001); *Nabisco v. Warner-*

---

[3] Relator will provide the Court with a copy if so directed. *See supra* n.1-2.

*Lambert Co.*, 32 F. Supp. 2d 690, 694 (S.D.N.Y. 1999) ("[a] trial court is free to reconsider and reverse its decision for any reason it deems sufficient"); *accord* Fed. R. Civ. P. 54(b). This Court may reconsider an opinion to the extent "it is consonant with justice to do so." *Liberty Media Corp. v. Vivendi Universal, S.A.*, 842 F. Supp. 2d 587, 593 (S.D.N.Y. 2012) (quoting *United States v. LoRosso*, 695 F.2d 45, 53 (2d Cir. 1982)).

## ARGUMENT

## I.     Relator Should be Granted Leave to Replead as to Certain Servicer Defendants

Relator seeks reconsideration of the Court's denial of leave to amend, so that he may replead with the particularity required by the Court's opinion as to seven Servicer Defendants. Relator respectfully submits that denial of leave to amend in this case would conflict with controlling precedent and, in any event, is contrary to the interests of justice.

The Second Circuit has a "strong preference for resolving disputes on the merits." *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011) (per curiam); *accord* Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S. 178, 230 (1962) (requiring leave to amend to be freely given absent undue delay, bad faith, or dilatory motive on the part of the movant, undue prejudice, futility, or the failure to cure deficiencies). This preference is "especially" strong "where dismissal of [a] complaint was based on Rule 9(b)." *Acito v. IMCERA Group*, 47 F.3d 47, 55 (2d Cir. 1995). Consequently, "[c]omplaints dismissed under Rule 9(b) are almost always dismissed with leave to amend." *Pasternack v. Shrader*, 863 F.3d 162, 175 (2d Cir. 2017) (internal quotation marks omitted); *see, e.g.*, *United States v. Huron Consulting Group, Inc.*, 09 Civ. 1800 (JSR), 2010 U.S. Dist. LEXIS 97423, at *8 (S.D.N.Y. Aug. 25, 2010) ("Because it is possible that relator may be able to plead with greater particularity, the [False Claims Act claim] is also dismissed without prejudice."). The Circuit has frequently reversed denials of leave to submit amendments aimed at satisfying Rule 9(b), like those sought here. *See, e.g.*, *Wight v.*

*BankAmerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000) (holding court erred by denying "leave to amend [a] complaint to bolster . . . allegations of scienter" that had not met Rule 9(b)); *Olsen v. Pratt & Whitney Aircraft*, 136 F.3d 327, 276 (2d Cir. 1998) (reversing and observing that parties with claims "dismissed pursuant to Rule 9(b) are typically given an opportunity to amend their complaint").

Reconsideration is particularly appropriate on this issue because the question of whether Relator should be denied leave to amend to satisfy Rule 9(b) was "not briefed by the parties." *Lewis v. Rosenfeld*, 145 F. Supp. 2d 341, 343 (S.D.N.Y. 2001); *accord DietGoal Innovations LLC v. Wegmans Food Markets Inc.*, 2:14cv143 (E.D. Va. June 5, 2014), at n.1 ("Because the Court [ruled] without briefing from the parties, however, the Court will not apply the deferential standard normally applied to a motion to reconsider."). Defendants did not explain in their memoranda of law why Relator should not be permitted to replead to satisfy Rule 9(b) and did not submit authority to that effect, *see* Serv. Def. Mem (Doc. 57) at 12-16, Serv. Def. Rpl. Mem. (Doc. 69) at 1-5; rather, they raised sundry legal arguments that could not be cured by additional pleading (*e.g.*, the materiality and falsity arguments this Court rejected) and thus summarily asked that the case be dismissed with prejudice. *See* Serv. Def. Mem. at 48. As a result, the Court did not have the benefit of the parties' briefing or arguments on the law governing leave to replead to satisfy Rule 9(b).

None of the circumstances justifying denying leave to amend to cure Rule 9(b) deficiencies are present in this case. ***First***, prior amendments would not make amendments aimed at Rule 9(b) deficiencies either untimely or improper, as the Court observed at the initial pretrial conference—where, over the Servicer Defendants' objections, it set a schedule for

amendments after an anticipated decision on the Rule 9(b) motions[4]—and as reflected in the Court's grant of leave to Relator to replead other claims, *see* Opinion and Order at 33. The Court's Opinion and Order did note that Relator had previously amended his Complaints as one reason for denying leave to do so again. Opinion and Order at 27. But each prior amendment was made without any guidance from the Court or Defendants as to the particular Rule 9(b) issue on which the Complaints were deficient. The Second Circuit has explained that the appropriate time for an amended pleading is after a plaintiff has received guidance from the court regarding any deficiencies in his complaint. *Cresci v. Mohawk Valley Cmty. Coll.*, 693 F. App'x 21, 25 (2d Cir. 2017) ("The proper time for a plaintiff to move to amend the complaint is when the plaintiff learns from the District Court in what respect the complaint is deficient. Before learning from the court what are its deficiencies, the plaintiff cannot know whether he is capable of amending the complaint efficaciously."); *see also U.S. ex rel. Steury v. Cardinal Health, Inc.*, 625 F.3d 262, 271 (5th Cir. 2010) (amendment should have been permitted where previous amendment occurred shortly after defendant was served and before it had responded).

Nor was Relator required to amend his complaint prior to the commencement of the briefing, based solely upon defendants' conclusory summary of the bases for its dismissal motion. Requiring amendment based on a brief preview of the defendants' arguments, let alone without any guidance from the Court, would run afoul of Second Circuit precedent. *See Loreley Fin. No. 3 v. Wells Fargo Secy's*, 797 F.3d 160, 190 (2d Cir. 2015); *cf. United States ex rel. O'Donnell v. Countrywide Fin. Corp.*, 961 F. Supp. 2d 598, 610 (S.D.N.Y. 2013) (only

---

[4] *See* Apr. 17, 2018 Tr. at 6:17-19; 20:13-18; *see also* Civil Case Management Plan, dated Apr. 17, 2018 Dkt. No. 94 (allowing amendments without leave of Court through June 15 (*i.e.*, a date after the Court's anticipated May 28 ruling on the Rule 9(b) motions, *see* Apr. 17, 2018 Tr. at 20:3-5).

dismissing a Complaint with prejudice on Rule 9(b) grounds after government had opportunity to amend both after discovery and after being put on notice of perceived deficiencies by Defendants' formal motions to dismiss).[5] Any such requirement would improperly present Relator "with a Hobson's choice: agree to cure deficiencies not yet fully briefed and decided or forfeit the opportunity to replead." *Loreley Fin. No. 3*, 797 F.3d at 190.

**Second**, although the Court appears to have concluded that further amendments would have been futile, they would not be. The Opinion and Order explained that the Court dismissed the claims with prejudice because counsel for Relator did not at oral argument provide more detailed allegations about the Servicer Defendants' knowledge of the fraudulent expenses they had passed on to the GSEs and FHA, Opinion and Order at 27, from which the Court concluded Relator could not plead any further information. But, at argument, counsel was responding to the Court's question about what the current Complaints were based on, not what Relator could or would like to add in any amended pleadings should they be necessary. *See* May 25, 2018 Hr'g Tr. at 41:16-20 ("I think that part of their complaint, and it was something that was of concern to the Court, is how much of your allegations against the servicer defendants are based on information and belief. And I guess my question is, what was the information part of that that you relied on?"). To respect the U.S. Attorney's Office's policies, Relator's complaints avoided

---

[5] Contrary to the Servicers Defendants' position (as articulated to Relator), Relator never forfeited the opportunity to replead. At the April 17 conference, Relator's counsel explained that he felt confident in connection with the potential 9(b) motion and would "take his chances" on winning or, if necessary, repleading. This comment came on the heels of the Court's statement that, under controlling Second Circuit precedent, it "would be not quite compelled—but close to it" to grant leave to file an additional complaint, *see* Apr. 17, 2018 Tr. at 4:4-16. And the comment comports with the Second Circuit's holding that, even where a plaintiff chooses to "stand by [a] complaint after a preview of Defendants' arguments," he should be given a chance to amend after the Court issues "a definitive ruling" dismissing claims on Rule 9(b) grounds. *Loreley Fin. No. 3 v. Wells Fargo Secy's*, 797 F.3d 160, 190 (2d Cir. 2015).

reliance on information from the Government's investigation. Counsel thus did not point to any such materials as information supporting its then-current complaints. If, by contrast, the Court had asked whether Relator could make additional allegations supporting his claims, Relator would have pointed to the materials obtained in the course of the Government's investigation, which allow much greater particularity.

Indeed, once free to use documents obtained from the Government, Relator can address directly the concerns the Court raised in his opinion dismissing the Servicer Defendants—a failure to plead particularized facts about how each Servicer Defendant did or did not monitor foreclosure costs, by detailing their policies and practices with respect to claims review, quality control, and monitoring of vendors and fees. The Court explained in its Opinion and Order that Relator's claims against the Servicer Defendants did not satisfy Rule 9(b) because "the relevant question is whether and to what extent each Servicer Defendant did or did not monitor foreclosure costs," Op. at 24 n.8 and Relator "alleges nothing in particular about any of the Servicer Defendants except that they serviced the mortgages mentioned in the complaints," *id.* at 25; *see also id.* at 26 ("A Complaint fails to satisfy Rule 9(b) . . . where it alleges nothing at all with respect to how each individual defendant did or did not perform its obligations . . .").

In fact, the Court further suggested that one way in which Relator could survive a Rule 9(b) challenge is pleading "facts regarding Defendants actual servicing practices." *Id.* at 26. "[F]acts regarding Defendants actual servicing practices" are precisely what Relator understands the Government to possess, based on its sharing of investigation-phased materials with Relator, and Relator should be given an opportunity to amend based on the type of information the Court wanted to see included in the Complaints. Such amendments would not be futile.

*Third*, allowing repleading would not result in any undue delay. Relator raised the prospect of obtaining documents from the Government's investigation at the initial conference in April but did not press the issue when the Government expressed a preference that such materials not be turned over, Apr. 17, 2018 Tr. at 18:11-13, and Relator believed his allegations were sufficient to satisfy Rule 9(b). Relator has not used the documents so far in order to comport with the policies of the United States Attorney's Office and the Sharing Agreement. To comply with those policies, Relator has issued a request for production to the Government, which would allow Relator to obtain reproductions in discovery of the materials he had already reviewed but cannot yet use.

There is no reason to deny Relator the opportunity to obtain this discovery to reveal information that he has already has reviewed. This will not be a fishing expedition. Relator is not seeking to learn anything he does not already know. Other authorities are concerned with plaintiffs who file complaints "as a pretext for discovery of unknown wrongs." *See Madonna v. U.S.*, 878 F.2d 62, 66 (2d Cir. 1989). Here, on the other hand, Relator knows exactly what targeted discovery will reveal and is prepared to file amended complaints using it at any time the Court gives him the green light. Moreover, courts have repeatedly concluded that the use of information gathered during governmental investigations is a permissible basis on which to amend a *qui tam* complaint. *Vassallo*, 2017 WL 4570706, at *5 ("courts that have addressed the present situation appear united in their allowance of amended complaints based on information gleaned from government investigations"); *Underwood*, 720 F. Supp. 2d at 680 ("Genentech offers no authority—and I can find none—barring amendments based on discovery the relator obtained from the Government."); *Banigan*, 2011 WL 794915, at *1 (noting presumption that "a relator may reinforce the complaint with information obtained from government documents"). In

fact, in one instance, just as here, the relator obtained evidence from the government by way of a subpoena after the government declined to produce it voluntarily and over the defendant's objection. *See Underwood*, 720 F. Supp. 2d at 673.

**Finally**, the limited discovery Relator seeks would impose no burden on any Servicer Defendant. Courts' reluctance to permit discovery before a determination that Rule 9(b) is satisfied stems in part from a fear of permitting a plaintiff to force defendants into "a long and expensive discovery process in the hope of uncovering some sort of wrongdoing." *See, e.g.*, *Hemming v. Alfin Fragrances, Inc.*, 1987 WL 6906, at *2 (S.D.N.Y. Feb. 10, 1987) (internal quotation marks omitted). Here, there is no such risk; Relator need not seek any discovery from Defendants until after satisfying Rule 9(b) using limited discovery from the Government. Either course would comply with the Second Circuit's directive that limited discovery might be appropriate in some *qui tam* cases and, if it bears out Relator's allegations, more complete discovery would be appropriate. *See United States ex rel. Chorches v. American Medical Response, Inc.*, 865 F.3d 71, 87 n.13 (2d Cir. 2017).

This is not a case where a relator is seeking discovery in the hope that it will permit him to flesh out an amended complaint. In this case, Relator already *knows* that the discovery not only adds particularity to his allegations, but confirms that his allegations against the Servicers are well-founded. The interests of justice and Second Circuit caselaw manifestly support reconsideration here to permit Relator to make these amendments to satisfy the Rule 9(b) as articulated by this Court.

## II.   Relator Should be Granted Leave to Replead as to Chase

With respect to the Chase defendants, Relator will plead details surrounding communications he had with outside counsel for Chase. In 2012, after watching the Rosicki firm overcharge for foreclosure expenses for years, Relator filed an objection on behalf of a

bankruptcy client challenging the Rosicki firm's billing practices. *See In re Nowak*, No. 1-11-11080-CLB (Bankr. W.D.N.Y.). Relator detailed these overcharges in a lengthy brief submitted to the bankruptcy court on January 30, 2012, which was accompanied by 47 pages of exhibits documenting the overcharges. *Id.*, Doc. Nos. 66, 66-1 – 66-12. About the same time, he posted to his blog soliciting additional information about the Rosicki firm's billing practices. In response, the Rosicki firm sued Relator for defamation. *Rosicki, Rosicki & Assocs. v. Grubea*, Index No. 5107/2012 (Sup. Ct. Nassau Co.).

Chase was the lender in the Nowak case and hired separate outside counsel to get involved in the dispute. Those attorneys told Relator that the issue had risen very high in Chase's corporate legal department and that Chase was very unhappy that the Rosicki firm had sued him. Mr. Grubea told Chase's new lawyers in detail about the Rosicki firm's misconduct, including its use of affiliates to inflate charges, and that it was clear, based on other bankruptcy cases involving Chase, that it had no policy or procedure in place to ensure foreclosure expenses were reasonable or necessary. The objection that Mr. Grubea filed in the *Nowak* case further put Chase on notice that the issue was not limited to the Rosicki firm, but that there was a pattern of foreclosure law firms both using more expensive, non-local vendors to do work traditionally done by cheaper, local vendors, and of making huge sums of money by funneling work to affiliates. The bankruptcy court ordered that discovery against Chase could go forward and found that the issues Mr. Grubea had raised – including whether "an affiliated company [could] be used as a subterfuge to recover a profit in excess of actual cost"—presented "challenging" and "substantive" questions of law that could be briefed further. *Nowak*, Dkt. No. 88 at 4-5 (Nov. 29, 2012).

Chase was free to litigate the merits of the Rosicki affiliate issue but chose not to. Instead, Chase not only solicited a settlement from Mr. Grubea but also agreed to pay him a staggering $32,500 in legal fees for a dispute over $1,500 in costs. Further, Chase required that Relator sign a confidentiality clause as part of the settlement, which certainly indicates that Chase desired to keep this issue under wraps—and pressured Rosicki to discontinue its baseless defamation action against Relator.[6] It was apparent to Relator that Chase knew exactly what was going on and chose to do nothing, especially since it continued to use Rosicki as foreclosure counsel even after the *Nowak* case was litigated. Certainly, Chase's handling of the *Nowak* litigation raises a "strong inference" of recklessness (and perhaps actual fraud). The investigative materials produced by Chase are highly relevant to whether Chase's policies changed or didn't change in response to its actual knowledge of the Rosicki problem (and the affiliate issue generally). At a minimum, Relator should be entitled to pursue a claim against Chase for the GSE and FHA-based foreclosure work it funneled to the Rosicki firm after Relator put its legal department on notice of the Rosicki firm's specific misconduct.

## CONCLUSION

Relator's claims against the Servicer Defendants are important, already have overcome numerous defense arguments based on the False Claims Act, and should be decided on their merits. This Court's opinion set out the level of detail needed for Relator to proceed against those defendants. Relator has drafted amendments against a subset of the Servicer Defendants, and Relator submits those amendments will satisfy the Court's standards with regard to those defendants. In drafting those amendments, Relator has relied on internal bank records that have been requested in discovery in this ongoing case. Under Second Circuit authority and in the

---

[6] The confidentiality provision has an exception for "any pending or future litigation."

interest of justice, Relator should be provided a chance to replead to satisfy the Court's concerns raised in its Opinion and Order.

For the foregoing reasons, Relator respectfully seeks a narrow order amending the Court's June 23, 2018 Opinion and Order insofar as it dismissed his claims against the Servicer Defendants with prejudice and granting him leave to file an amended complaint against certain of the Servicer Defendants.

Dated:   July 11, 2018
         New York, New York

Respectfully submitted,

SUSMAN GODFREY L.L.P.

/s/ Jacob W. Buchdahl
Jacob W. Buchdahl
Arun Subramanian
Cory S. Buland
1301 Avenue of the Americas, 32nd Fl.
New York, NY 10019
Telephone No.:  (212) 336-8330
Fax No.:  (212) 336-8340
jbuchdahl@susmangodfrey.com
asubramanian@susmangodfrey.com
cbuland@susmangodfrey.com

Attorneys for Plaintiff-Relator Peter Grubea

WILLENS & SCARVALONE LLP

/s/ Edward Scarvalone
Edward Scarvalone
40 Wall Street, Suite 4100
New York, New York 10005
Telephone No.:  (646) 200-6334
Fax No.:  (800) 879-7938
escarvalone@willensscarvalone.com

Attorney for Plaintiff-Relator Peter Grubea
in 13 Civ. 1467

16